HOUCK, J.
The plaintiff in error was tried and convicted of keeping a place for the unlawful furnishing of intoxicating liquors as a beverage. The same is alleged to have been done in the village of "Rittman, Wayne county, Ohio, and which village at the time was “dry territory,” having been made so by a local option election.
To the judgment of conviction, by the mayor of said village of Rittman, the accused prosecuted error to the common pleas *318 court, and the same being affirmed, error is here prosecuted seeking a reversal of the judgment of said courts.
The record discloses the following undisputed facts:
The village of Rittman is dry territory, by reason of a local option election. On Saturday evening, August 18, 1917, the sheriff of Wayne county, with a search and seizure warrant, visited the home of Baysinger, and in the basement of the home seized four eight-gallon kegs of beer, a beer pump, and some beer glasses and buckets. At said time and place there wei’e eight persons (including the accused) present, either in the room or just on the outside, and some were drinking beer.
In the basement where the beer was found there was nothing else stored except the four kegs of beer, with ice on them, and a long bench with beer glasses on it. One of the kegs had a beer pump in it. That several times a week during the summer of 1917, and prior to August 18, people would go to said basement, singly, and sometimes four or five at a time, and during this time a drayman was seen, on several occasions, unloading beer there, the number of kegs delivered being from one to five at a time, and this was as often as three times a week during the aforesaid period.
The beer, on all these occasions, was purchased by those who visited the basement, each paying his proportionate share of the cost. Baysinger usually collected the money and ordered the beer, and all deliveries were made to him, and drunk by the contributors in the basement of the Baysinger home. The basement door was left open when beer was there, and the contributors were privileged to, and some of them did, visit the place and drink beer on their way home from work, and at other times, when Baysinger was not present.
The question presented to the court is: Under these facts and the law, was the accused properly convicted?
The conviction was had under favor of Sec. 13232 G. C. which reads:
“Whoever, after thirty days from the date of an election held within- a municipal corporation to determine by ballot whether the sale of intoxicating liquors as a beverage should be prohibited therein, a majority of votes at such election having *319 been east in favor of prohibiting sueli sale within such municipality, in any manner directly or indirectly, sells, furnishes, gives away, or otherwise deals in intoxicating liquors as a beverage or keeps or uses a -place, structure or vehicle, either permanent or transient, for such selling’, furnishing or giving away or in which or from which intoxicating liquors are so sold, given away, furnished or otherwise dealt in, shall be fined not less than fifty dollars nor more than two hundred dollars, and for a second offense shall be fined not less than one hundred dollars nor more than five hundred dollars, and for each subsequent offense shall be fined not less than two hundred dollars and imprisoned not less than ten days nor more than sixty days.”
Counsel for plaintiff in error maintains that the conviction was wrongful, and not warranted under the facts and law, because the accused had a legal right to associate himself with others in the ordering of beer, and the mere fact that they drank 1he same on the premises of the accused two or three times a week, during the summer of 1917, and the further fact that it was in his home or private residence, would not constitute, in law, a keeping of a place for the furnishing of intoxicating liquors unlawfully.
This claim might have some force if our legislature had not spoken, and clearly and fully disposed of same by statutory provision.
Section 6099 reads:
“In clubs, societies or other combinations of individuals where intoxicating liquor is kept for use of as a beverage by individual members thereof in territory where the sale, furnishing or giving away of intoxicating liquor as a beverage is prohibited, the keeping of such place shall be held to be the keeping of a place where intoxicating liquors are furnished or given away in violation of the local option laws. ’ ’
Section 6102 reads:
“In a territory in which the sale, furnishing or giving away of intoxicating liquor as a beverage is prohibited, the keeping of intoxicating liquor in a room, building or other place, except in a regular drug store or in a "bona fide private residence, shall *320 be prima facie evidence that such liquor is kept for unlawful sale, furnishing or giving away.”
So far as this case is concerned, the legislature of our state, by the above enactments, has saved the courts much work and labor by clearly defining the elements necessary to constitute the offense of keeping a place for the unlawful furnishing of intoxicating liquors. The language used is not ambiguous, and needs no interpretation, but is plain and explicit.
The accused might not have known of these provisions of our law, or he might have failed to properly interpret same, but it matters not, as a failure to know the law excuseth no one for its violation.
It seems to us that the crux of this ease centers in the proper definition of the word “furnishing,” as found in the statutes hereinbefore referred to, and as thus interpreted, when measured by the conceded facts in this case, how stands the issue as between the state of Ohio and Lazarus Baysinger %
The Supreme Court of this state has said that the supplying of intoxicating liquors to a minor, to be drunk by him, is a furnishing of the liquor to such minor; although it was purchased by another, and supplied by the seller to the minor in pursuance of such purchase.
The facts in this ease abundantly show that while no liquors were sold, and while the proof does not in so many words indicate that any was given away to other than the persons who assembled there from time to time, yet it is clearly proven that Baysinger furnished the place, secured the beer, and made it possible for the men to congregate quite frequently in the basement of his home, and there they drank beer on numerous occasions.
By reason of this, his home — in law — had been transformed into a public resort, where persons were permitted to congregate “in dry territory,” and by so doing attempted to set aside the wishes of the residents of the village of Bittman, who had heretofore by a majority vote at a local option election said, as provided in Sec. 13232 G. C., that, “whoever, within such municipality, in any manner directly or indirectly, sells, furnishes, gives away, or otherwise deals in intoxicating liquors as *321 a beverage, or keeps or uses a place, structure or vehicle, either permanent or transient, for such selling, furnishing or giving away, or in which or from which intoxicating liquors are sold, given away, or furnished or otherwise dealt in, shall be fined, ’ ’ etc. * * #
If we are to be guided by the language thus used in the above legislative enactment, and in doing so give to the word “furnishing” its commonly accepted meaning, we are unable to find other than the courts below in this case.
The word “furnishing” is broad and comprehensive in its scope and meaning, and in so holding we are only carrying out the legislative intent of the lawmakers who enacted the statute in which it is used.
The statutes relating to the violation of local option laws, like all criminal statutes, were passed to be enforced, and the will of the people in voting “territory dry” must be held sacred, and violators thereof must atone to the offended law, if under the facts and a proper application of the law to same, they are found to be such violators.
In our examination of the testimony and evidence, as contained in the bill of exceptions, and a review of the entire record before us, we find no errors of a prejudicial character that would justify a reversal of the judgment of conviction entered in this case.
Judgment affirmed, and case remanded for execution.
Powell and Shields, JJ., concur.